UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARY SCHREIBER, and THE LEGENDS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., *et al.*, <br><br> Defendants. | CASE NO. C08-896RSM <br><br> ORDER |

## **I. INTRODUCTION**

This matter comes before the Court on a motion to dismiss brought by all Defendants with the exception of Defendant Amazon.com, Inc. ("Amazon"). (Dkt. #12). Defendants argue that Count I of Plaintiffs' Complaint which alleges copyright infringement should be dismissed because it fails to set out the infringing activities with specificity under FRCP 8(a)(2). Alternatively, Defendants claim that the matter should be stayed pursuant to a license agreement entered into between the parties that compels all disputes to be resolved by arbitration. Lastly, Defendants also argue in the alternative that the instant case should be transferred to the District Court of New Jersey.

Defendant Amazon brings a separate motion to dismiss (Dkt. #14), joining the arguments made by Defendants with respect to Plaintiff's copyright infringement claim, and also arguing that Plaintiffs' state law claims should be dismissed under the doctrine of preemption. In addition, Defendant Amazon agrees that if the claims are not dismissed, arbitration is the proper forum to settle the instant dispute. Defendant Amazon opposes transfer to New Jersey.

MEMORANDUM ORDER
PAGE - 1

Plaintiffs respond to both motions that they have met the pleading requirements of FRCP 8(a)(2). Plaintiffs also argue that the arbitration agreement at issue in this case is unenforceable because it was procured as a result of fraud. Additionally, Plaintiffs contend that transfer is inappropriate because the interests of justice are served by requiring the parties to litigate in this district. With respect to Defendant Amazon's argument regarding preemption, Plaintiffs argue that the doctrine does not apply because their state law claims are separate and independent from their copyright infringement claim.

For the reasons set forth below, the Court GRANTS IN PART Defendants' motion to dismiss (Dkt. #12), and STRIKES AS MOOT Defendant Amazon's motion to dismiss (Dkt. #14). The Court shall stay the instant proceedings pending arbitration.

## II. DISCUSSION

### A. Background

Plaintiff R. Gary Schreiber ("Mr. Schreiber") is sole and exclusive owner of co-Plaintiff The Legends Corporation ("Legends"), a Delaware Corporation with its principal place of business in Ohio. Plaintiffs indicate that on December of 1982, Mr. Schreiber was introduced to Robert C. Kneivel, a/k/a Evel Knievel ("Evel"), the widely popular daredevil who achieved acclaim for his stunts in the 1960's and 1970's, to discuss possible business opportunities. Apparently, Evel was in dire need of capital at the time to resurrect his career and to satisfy civil judgments and Internal Revenue Service liens. Therefore Plaintiffs allege they paid in excess of one million dollars for certain intellectual property rights, including the copyrights to photographs, videotapes, motion pictures, and films embodying Evel's daredevil feats and stunts. Plaintiffs were able to use such rights to produce three films entitled: *The Last of the Gladiators*; *Evel Knievel's Spectacular Jumps*; and *Evel Knievel's Greatest Hits*. Furthermore, Plaintiffs claim that they distributed the films for approximately ten years beginning in June of 1987.

On July 11, 1997, Legends entered into an agreement ("License Agreement") with Defendant White Star Entertainment, Inc. ("White Star"), a business incorporated in New Jersey in the business of selling and distributing video content. The License Agreement gave

White Star the right to distribute the three films owned by Legends for a period of ten years. (Pl.'s Compl., Ex. 1, ¶ 3). In exchange, White Star advanced Legends $20,000 and agreed to make royalty payments to Legends. (*Id.*, ¶¶ 6 and 7). As part of the agreement, Legends also turned over a master video of all the film clips it had acquired from Evel. Importantly, the License Agreement contained an arbitration clause.[1] The relevant provision in the agreement provides:

> The validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New Jersey applicable to contracts entered into and performed entirely within said State. *The American Arbitration Association in Monmouth County, NJ only, will have jurisdiction of any controversies regarding this Agreement; any action or other proceeding which involve such a controversy will be so arbitrated and not elsewhere. Such arbitration shall be binding* and the parties agree that they will abide by and perform any award rendered in any such arbitration and that any court having jurisdiction may issue a final judgment based upon any such award. The parties shall share equally any American Arbitration Association fee incurred by either party in connection with any dispute.

(Dkt. #12, Ex. A, ¶ 17) (emphasis added).

After approximately ten years elapsed, and the License Agreement terminated by its own terms, Plaintiffs allege that they demanded the return of all property belonging to them on several occasions. However, Plaintiffs claim that White Star repeatedly refused. Additionally, Plaintiffs claim that White Star continued to sell and distribute Plaintiffs' intellectual property worldwide in violation of their ownership interest in the property. Plaintiffs specifically allege that White Star licensed the films to other entities, most notably Defendant Duke Video, Inc. ("Duke"). As a result, Plaintiffs initiated the instant lawsuit by filing a complaint in this Court on June 6, 2008.

In addition to White Star and Duke, Plaintiffs name Kultur Films International, Inc. ("Kultur"), and Dennis and Pearl Hedlund as defendants. Similar to White Star, Kultur is also

---

[1] Plaintiffs attached the License Agreement to their complaint, but remarkably omitted the page containing the arbitration clause. Defendants pointed out the omission, and attached the missing page in their motion to dismiss. Plaintiffs' omission is at worst, an intentional and "Evel" misrepresentation to the Court, and at best, a substantial and material oversight that is simply inexcusable. The Court is confident that Plaintiffs' counsel will not commit such an egregious error in this Court or any Court of law in the future.

MEMORANDUM ORDER
PAGE - 3

incorporated in New Jersey and is in the business of selling and distributing video content. Both White Star and Kultur are owned by Mr. and Mrs. Hedlund. Although not specifically laid out in the complaint, Plaintiffs seem to allege that Kultur also sold and distributed the films owned by Plaintiffs in violation of the License Agreement.

Plaintiffs also named Amazon as a defendant. As Amazon points out in its motion to dismiss, Plaintiffs only mention Amazon in two paragraphs of their 77-paragraph complaint, and are even omitted from the "Parties to the Lawsuit" section of Plaintiffs' complaint. Plaintiffs allege that Amazon is a proper defendant in this case because they "sold, merchandised, advertised and contracted on behalf of, and for the benefit of, defendants and profited from the copyright infringement." (Pl.'s Compl, ¶ 3). Plaintiffs further allege Amazon facilitated the sale of the films unlawfully by acting as a "retailer, salesperson, merchandiser and agent for White Star, Kultur, and Duke[.]" (*Id.*, ¶ 48). Before answering Plaintiffs' complaint, Defendants brought the instant motions to dismiss. Significantly, White Star has already initiated arbitration pursuant to the arbitration clause in the License Agreement on July 24, 2008, and the American Arbitration Association ("AAA") in New Jersey confirmed White Star's arbitration demand on July 30, 2008. (Dkt. #18, Decl. of Schwartz, Ex. D).

### B. The License Agreement Compels Arbitration

The Federal Arbitration Act ("FAA") governs all arbitration agreements affecting interstate and international commerce. *See* 9 U.S.C. § 2. Whether a dispute is subject to arbitration is determined by examining the language of the agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered . . . [and to] *rigorously enforce* agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (emphasis added); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (finding that the primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms"). Moreover, "[t]he FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration[.]" *E.E.O.C. v. Waffle House, Inc.*, 524 U.S. 279,

289 (2002) (citing 9 U.S.C. §§ 3 and 4). The party opposing arbitration bears the burden of showing that an agreement to arbitrate is not enforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

The Supreme Court has established that the FAA manifests a liberal federal policy favoring arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The FAA "establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to the issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

In the instant case, and notwithstanding the parties arguments with respect to dismissal or transfer, the Court finds it unequivocally clear that the language of the License Agreement compels the parties to resolve their dispute through arbitration. It is worth reiterating the relevant portions of the arbitration clause which specifically provides:

> The American Arbitration Association in Monmouth County, NJ only, will have jurisdiction of any controversies regarding this Agreement; any action or other proceeding which involve such a controversy will be so arbitrated and not elsewhere. Such arbitration shall be binding and the parties agree that they will abide by and perform any award rendered in any such arbitration and that any court having jurisdiction may issue a final judgment based upon any such award.

(Dkt. #12, Ex. A, ¶ 17).

Furthermore, Plaintiffs claim that "[t]he license agreement calls for [Mr. Schreiber] to grant certain limited licenses to defendant White Star [] in exchange for cash payments and quarterly sales and mechanical reproduction records and documents . . . White Star has failed to complete the original payments due *under the terms of the license agreement*." (Dkt. #16 at 6) (emphasis added). In addition, Plaintiffs claim that White Star and Kultur, at the direction of Mr. Hedlund, "were 'double dealing' by gratuitously giving copies of the [films] to Evel while withholding payments due plaintiffs and, in doing so, [were] *breaching the Agreement*." (Pl.'s

MEMORANDUM ORDER
PAGE - 5

Compl., ¶ 36) (emphasis added). In short, Plaintiffs repeatedly allege throughout their complaint and in their responses to Defendants' motions to dismiss that Defendants have deprived them of their rightful copyright interests, and have continued to sell and distribute property owned by Plaintiffs in violation of the License Agreement. Consequently, the claims Plaintiffs bring in this Court are clearly allegations that relate to a "controversy regarding this Agreement." It could not be any clearer that Plaintiffs' claims fit squarely within the scope of the arbitration agreement; an agreement that specifically holds that any controversy relating to the agreement be subject to binding arbitration.

Nevertheless, Plaintiffs argue that the arbitration clause is void because it was "procured as a result of fraud." (Dkt. #16 at 5). However, as mentioned above, the party opposing arbitration bears the burden of showing that an agreement to arbitrate is not enforceable. *Green Tree*, 531 U.S. at 92. Here, Plaintiffs fall significantly short of proving that any fraud existed at the time the License Agreement was entered into. Plaintiffs fail to even mention the relevant rules of law with respect to fraud, and only make bald assertions that Defendants never intended to perform under the License Agreement. The Court cannot find with any definitive certainty, much less reasonable certainty, that Defendants acted fraudulently in the formation of this contract. In addition, Plaintiffs also suggest that the clause is unenforceable because White Star and Mr. Hedlund failed to perform under the terms of the License Agreement when it was entered into. Ironically, Plaintiffs argument strengthens the case for arbitration. Whether White Star complied with the License Agreement relates to the merits of the contract, a dispute clearly subject to arbitration for the reasons set forth above.

Ultimately, in analyzing a licensing agreement, courts apply general principles of contract interpretation. *See Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 989 (9th Cir. 2006). The most fundamental tenet of contract law requires the Court to honor the intention of the parties, which is based on the clear and unambiguous language of the contract. *See United States Cellular Invest. Co. of Los Angeles v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002). Here, the language is abundantly clear. The parties agreed to be subject to binding arbitration, and the Court shall honor the parties' original intentions.

It is also worth noting that Defendant Amazon does not oppose this matter being referred to arbitration. Although it is not a party to the arbitration agreement, Defendant Amazon's liability turns on a determination of whether the other Defendants have exceeded the scope of the License Agreement with Plaintiffs. Certainly if the AAA determines that Defendant White Star did not breach the License Agreement, Defendant Amazon cannot be held liable for their conduct. This is equally true with respect to the other Defendants outside of White Star in this case. As a result, the Court shall stay the instant case pending arbitration, and strike as moot Defendant Amazon's motion to dismiss.

### C. The Parties' Additional Arguments

Because the Court has determined that the dispute in the instant case is subject to arbitration, the Court finds it unnecessary to address the parties' remaining arguments.

## III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and orders:

(1) Defendants' "Motion to Dismiss or, Alternatively, to Stay Proceedings Pursuant to Rule 8 and 12(b)(6) or to Transfer to the District of New Jersey" (Dkt. #12) is GRANTED IN PART, and Defendant "Amazon.com's Motion to Dismiss" (Dkt. #14) is STRICKEN AS MOOT. The Court shall STAY the instant proceedings pending arbitration. The parties are directed to submit a Joint Status Report <u>within four (4) months from the date of this Order</u> informing the Court of the status of their arbitration. In the event that arbitration does not resolve the parties' disputes, Defendants' are free to refile motions to dismiss if and when the stay is lifted in this case.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this __20__ day of October, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE